

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| UNITED STATES OF AMERICA | | : | CRIMINAL NO. 2:15CR00125 |
|---|---|---|---|
| | | : | |
| v. | | : | 33 U.S.C. § 1908(a) |
| | | : | 18 U.S.C. § 1519 |
| DSD SHIPPING, AS, | (01) | : | 18 U.S.C. § 1505 |
| DANIEL PAUL DANCU, | (02) | : | 18 U.S.C. § 2 |
| BO GAO, | (03) | : | |
| XIAOBING CHEN, and | (04) | : | JUDGE MINALDI |
| XIN ZHONG | (05) | : | |
| | | | MAGISTRATE JUDGE KAY |

## CRIMINAL INDICTMENT

### Introduction

The Grand Jury charges:

At all times relevant to this Criminal Indictment:

A.   **The Corporate Defendant**

1.   Defendant, **DSD SHIPPING, AS,** (hereinafter referred to as "DSD") was a corporation located in Norway and Singapore. DSD was the owner and operator of the oil tanker *Stavanger Blossom* (*M/T Stavanger Blossom*). The charges in this case arise, by and through the acts and omissions of DSD's agents and employees, who were acting within the scope of

their agency and employment and for the intended benefit, at least in part, of DSD.

**B.   The Individual Defendants**

2.   Defendant, **DANIEL PAUL DANCU**, was a citizen of Romania who served as the Chief Engineer on the *M/T Stavanger Blossom* from on or about August 25, 2014, until on or about November 3, 2014. As Chief Engineer, the defendant was the highest ranking Engine Department Officer aboard the vessel.

3.   Defendant, **BO GAO**, was a citizen of China who served as the Chief Engineer on the *M/T Stavanger Blossom* from on or about May 24, 2014, until on or about August 24, 2014. As Chief Engineer, the defendant was the highest ranking Engine Department Officer aboard the vessel.

4.   Defendant, **XIAOBING CHEN**, was a citizen of China who served as the Second Engineer on the *M/T Stavanger Blossom* from on or about August 25, 2014, until on or about November 3, 2014. As Second Engineer, the defendant was the second highest ranking Engine Department Officer aboard the vessel.

5.   Defendant, **XIN ZHONG**, was a citizen of China who served as the Fourth Engineer on the *M/T Stavanger Blossom* from on or about June 17, 2014, until on or about November 3, 2014. As Fourth Engineer, the defendant

C.   The *M/T Stavanger Blossom*

6.   The *M/T Stavanger Blossom* was a 56,172 gross ton ocean-going oil tanker. The *M/T Stavanger Blossom* was approximately 784 feet in length, was registered in Singapore, and had an International Maritime Organization (IMO) number of 9337389.

7.   The *M/T Stavanger Blossom* was headed by a Captain or Master, who was responsible for the overall operation of the ship including safety, pollution prevention, maintenance, scheduling, loading and reporting.

8.   The *M/T Stavanger Blossom* had an Engine Department headed by a Chief Engineer, who was assisted by a Second Engineer, a Third Engineer, a Fourth Engineer, a Motorman, an Oiler, a Fitter, a Wiper, and an Engine Cadet. The Chief Engineer reported directly to the Master of the vessel and had overall responsibility for the operation of the Engine Department, including the supervision of daily operations, and the formulation and implementation of Engine Department procedures. These Engine Department procedures included tracking the disposal and transfer of sludge, oil residue, oily mixtures, and machinery space bilge water from the vessel and making entries into an Oil Record Book.

9. The Second Engineer aboard the *M/T Stavanger Blossom* reported directly to the Chief Engineer and directly supervised the Engine Department, including the Third and Fourth Engineers. The Fourth Engineer was responsible for the operation of the ship's oily water separator and incinerator, and supervised the daily sounding of engineering storage tanks aboard the vessel. The Fourth Engineer provided tank soundings to the Chief Engineer for entry into the Oil Record Book. Both the Second and Fourth Engineers received training pertaining to the requirements for the Oil Record Book.

10. The operation of large marine vessels like the *M/T Stavanger Blossom* generates large quantities of sludge, oil residue, oily mixtures, and machinery space bilge water:

>   A. Sludge is generated during the process of purifying fuel oil, lubricating oil, and other petroleum products, so that these products can be used in the engines aboard the vessel. The sludge generated as a result of this process is stored aboard the vessel in sludge tanks. Sludge may properly be disposed of either by incineration aboard the vessel or by offloading it at a port through the use of a licensed hauler and disposal facility.

B. Engine Department operations also generate large quantities of oil contaminated machinery space bilge water, created when water mixes in the bottom of the vessel, known as the "bilges," with oil that has leaked and dripped from the machinery and the lubrication and fuel system for the engines. These "oily mixtures" are often referred to as "bilge waste," "bilge slops," and "slops from bilges," and are collected, stored, and processed to separate the water from the oil and other wastes using a pollution prevention control device known as an Oily Water Separator and an oil-sensing device known as an Oil Content Monitor. Machinery space bilge water may be discharged overboard only after passing through an Oily Water Separator to ensure that it contains fifteen parts per million ("ppm") or less of oil, as measured by the Oil Content Monitor. If the Oil Content Monitor detects an oil content of greater than 15 ppm in the effluent, it sounds an alarm, and shuts down the pumps or diverts flow back to the bilges in order to prevent the discharge of greater than 15 ppm of oil overboard.

## D.   Legal Framework

11. The United States is part of an international regime that regulates the discharge of oil from vessels at sea: the International Convention for the Prevention of Pollution from Ships, as modified by the Protocol of 1978

(together "MARPOL"). MARPOL is embodied in agreements that the United States has ratified and has been implemented in the United States by the Act to Prevent Pollution from Ships ("APPS"), 33 U.S.C. §§ 1901 *et seq*. APPS makes it a crime for any person to knowingly violate MARPOL, APPS, or regulations promulgated under APPS. 33 U.S.C. § 1908. These regulations apply to all commercial vessels operating in the navigable waters of the United States or while in a port or terminal under the jurisdiction of the United States, including vessels operating under the authority of a country other than the United States. 33 U.S.C. § 1902(a)(1)-(3).

12. MARPOL Annex I, *Regulations for the Prevention of Pollution by Oil,* established international standards governing the treatment and disposal of oily mixtures generated from the machinery spaces of a vessel. Under MARPOL, machinery space bilge water may be discharged overboard into the ocean only if it does not exceed 15 ppm of oil and the ship has in operation required pollution prevention equipment. This equipment includes: an oil filter, known as an Oily Water Separator; an alarm, known as an Oil Content Monitor; and an automatic stopping device, known as a Three-Way Valve. This equipment prevents the discharge of machinery space waste containing more than 15 ppm oil, the maximum legally permitted concentration of oil in the dischargeable mixture.

13. Consistent with the requirements contained in MARPOL, APPS regulations require that vessels such as the *M/T Stavanger Blossom* maintain a record known as an Oil Record Book in which the disposal and discharge overboard of sludge, oil residue, oily mixtures, and machinery space bilge water must be recorded. 33 C.F.R. § 151.25(d). Discharges from the machinery spaces must be fully and accurately recorded in the Oil Record Book without delay by the person in charge of the operations. 33 C.F.R. § 151.25 (d) and (h). The Oil Record Book also must record any emergency, accidental, or other exceptional discharges of oil or mixtures, including a statement of the circumstances, and reasons for, the discharge. 33 C.F.R. § 151.25(g). The Oil Record Book must be maintained aboard the vessel for not less than three years, and be readily available for inspection at all reasonable times. 33 C.F.R. § 151.25(k).

14. The United States Coast Guard, an agency of the United States Department of Homeland Security, is charged with enforcing the laws of the United States and is empowered under Title 14, United States Code, Section 89(a) to board vessels and conduct inspections and investigations of potential violations and to determine compliance with MARPOL, APPS, and related regulations. In conducting inspections, United States Coast Guard personnel rely on the statements of the vessel's crew and documents, including information contained in Oil Record Books. The United States Coast Guard

is specifically authorized to examine a vessel and its Oil Record Book for compliance with MARPOL and APPS. 33 U.S.C. § 1907(d); 33 C.F.R. § 151.23(a)(3) and (c).

E.   **The Charges**

**COUNT ONE**

**Knowing Failure to Maintain Accurate Oil Record Book –
Act to Prevent Pollution from Ships
33 U.S.C. § 1908(a)**

**Aiding and Abetting
18 U.S.C. § 2**

15.   The Grand Jury hereby re-alleges and incorporates by reference herein paragraphs 1 through 14 of this Criminal Indictment and further charges that:

16.   Between on or about August 5, 2014, and on or about November 3, 2014, in the Port of Lake Charles, Louisiana, and within the Western District of Louisiana, and elsewhere, defendant **DSD**, by and through the acts of its agents and employees, including senior ship engineers, acting within the scope of their agency and employment and at least in part for the benefit of defendant DSD, and defendants **DANIEL PAUL DANCU, BO GAO, XIAOBING CHEN, and XIN ZHONG,** did knowingly fail to maintain, caused the failure to maintain, and aided and abetted the failure to maintain, an Oil Record Book for the *M/T Stavanger Blossom* in which disposals of

sludge, oil residue, oily mixtures, and machinery space bilge water were required to be fully recorded. Specifically, the Defendants maintained, caused to be maintained, and aided and abetted the maintenance of, an Oil Record Book that (1) failed to record overboard discharges of oily mixtures and machinery space bilge water made without the use of an Oily Water Separator and oil monitoring equipment; and (2) failed to record internal transfers of sludge, oil residue, oily mixtures, and machinery space bilge water.

All in violation of Title 33, United States Code, Section 1908(a); Title 18, United States Code, Section 2; and Title 33, Code of Federal Regulations, Section 151.25(a), (d), (e), (g), (h), and (j).  [33 U.S.C. § 1908(a); 18 U.S.C. § 2; 33 C.F.R. § 151.25(a), (d), (e), (g), (h), and (j)].

## COUNT TWO

**Obstruction of Justice**
**18 U.S.C. § 1519**

**Aiding and Abetting**
**18 U.S.C. § 2**

17. The Grand Jury hereby re-alleges and incorporates by reference herein paragraphs 1 through 14 of this Criminal Indictment and further charges that:

18. Between on or about August 5, 2014, and on or about November 3, 2014, in the Port of Lake Charles, Louisiana, and within the Western District

of Louisiana, and elsewhere, defendant **DSD**, by and through the acts of its agents and employees, including senior ship engineers, acting within the scope of their agency and employment and at least in part for the benefit of defendant DSD and defendants **DANIEL PAUL DANCU, BO GAO, XIAOBING CHEN, and XIN ZHONG,** with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, namely the United States Coast Guard and the Department of Homeland Security, and in relation to and in contemplation of such matter, namely, a Port State Control vessel examination and inspection to determine compliance with MARPOL and United States law, did knowingly conceal, cover up, and falsify, and make false entries and omissions, and did knowingly aid and abet the concealment, cover up, falsification and making of false entries and omissions, in a record and document, that is, a false, fictitious, and misleading Oil Record Book for the *M/T Stavanger Blossom* that failed to record the overboard discharge, disposal, and transfer of sludge, oil residue, oily mixtures, and machinery space bilge water.

All in violation of Title 18, United States Code, Sections 1519 and 2. [18 U.S.C. §§ 1519 and 2].

# COUNT THREE

## Obstruction of Justice
## 18 U.S.C. § 1505

## Aiding and Abetting
## 18 U.S.C. § 2

19.  The Grand Jury hereby re-alleges and incorporates by reference herein paragraphs 1 through 14 of this Criminal Indictment and further charges that:

20.  Between on or about November 1, 2014, and on or about November 3, 2014, in the Port of Lake Charles, Louisiana, and within the Western District of Louisiana, and elsewhere, defendant **DSD**, by and through the acts of its agents and employees, including senior ship engineers, acting within the scope of their agency and employment and at least in part for the benefit of defendant DSD and defendant **XIAOBING CHEN,** did corruptly influence, obstruct and impede, and endeavor to influence, obstruct, and impede the due and proper administration of the law under a pending proceeding by the United States Coast Guard and the Department of Homeland Security. Specifically, during the aforementioned period of time, and during a United States Coast Guard inspection of the *M/T Stavanger Blossom* to determine the vessel's compliance with MARPOL and United States law the defendants presented to the United States Coast Guard engine room equipment that had

been altered to conceal the use of a bypass pipe to discharge overboard oily sludge, oily mixtures, slops from bilges, and bilge water that accumulated in machinery spaces, to wit: a "magic pipe" that connected to the overboard discharge valve was removed and a spool pipe was installed and painted to hide the installation.

All in violation of Title 18, United States Code, Sections 1505 and 2. [18 U.S.C. §§ 1505 and 2].

A TRUE BILL

_____
FOREPERSON: FEDERAL GRAND JURY

STEPHANIE A. FINLEY
United States Attorney

By: _____
HOWARD PARKER, KY Bar No. 53660
Assistant United States Attorney
800 Lafayette Street, Suite 2200
Lafayette, Louisiana 70501
Telephone:  (337) 262-6618

JOHN CRUDEN
Assistant Attorney General
Environment & Natural Resources Division

By: _____
SHANE N. WALLER, TX Bar No. 24049796
Trial Attorney
601 D. Street, NW
Washington, DC 20530
Telephone:  (202) 305-0362